**KLEIN**
CIVIL RIGHTS

**Brett H. Klein, Esq., PLLC**
305 Broadway, Suite 600
New York, New York 10007
T: (212) 335-0132 F: (212) 335-0571

October 4, 2018

**BY ECF**

The Honorable Denise L. Cote
United States District Court
500 Pearl Street
New York, New York 10007

> Re:     *Kerrin Randolph v. Metropolitan Transportation Authority, et al.,*
>         17 CV 1433 (DLC)

Your Honor:

I represent the plaintiff in the above-referenced civil rights action. I write to address the issues set forth in the Court's Order (ECF Doc. 82), as well as to address some additional issues in advance of trial.

### 1.  MTA Incident Reports

Although defendants informed the Court at the final pre-trial conference that they intended to offer five MTA incident reports, they have proffered six MTA incident reports with proposed redactions consisting primarily of the names of non-party police officers and date of birth and other personal information.

Defendants apparently seek to admit these reports on two purported bases. First, defendants argued in their Memorandum of Law in Opposition to Plaintiff's Motion *In Limine* that the reports are admissible to rebut plaintiff's claim that he was calm and did not raise his voice during his encounter with the police during the subject incident because the reports allege that during five other documented instances, plaintiff behaved in a loud, verbally belligerent, and disorderly manner toward police. *See* ECF Doc. 75, p. 3. This is plainly a propensity argument, that because plaintiff had purportedly behaved in a loud, verbally belligerent, and disorderly manner toward police on other occasions, he must have acted in conformity with that character trait during the subject incident as well. On its face, this is not a permissible purpose under the federal rules. *See United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); *see also Lataille v. Ponte*, 754 F.2d 33, 37 (1st Cir. 1985) ("Evidence of past misconduct cannot be introduced to show the likelihood of such misconduct in the case at hand."); *Lewis v. Velez*, 149 F.R.D. 474, 479-80 (S.D.N.Y. 1993) (holding that an inmates past history of violent behavior could not be admitted to rebut his claim that he acted in self-defense during the incident at issue). Defendants have not articulated a proper basis to admit this evidence under Rule 404 and therefore this evidence should be excluded as improper propensity evidence.

Second, defendants argue that the reports (as well as entries in plaintiff's medical records as argued more fully in Point 2, *infra*), are relevant impeachment evidence because they claim that

1

the reports include allegations of dishonest acts, including fabricating, feigning, and lying about medical issues. *See* ECF Doc. 75, p. 4. These allegations of feigned falls and medical issues are unproven and/or disputed hearsay allegations made against plaintiff by officers who will not be present in court and whose veracity therefore cannot be tested. Any unproven allegations are thus not proper impeachment. *See e.g., Stephen v. Hanley*, No. 03 CV 6226 (KAM)(LB), 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) (finding unproven charges and prior arrests are inadmissible for impeachment purposes).

Furthermore, insofar as the Court has ruled that the operative events relevant to plaintiff's claim are those events that occurred during his arrest, and not thereafter, whether or not plaintiff has purportedly feigned falls from his wheelchair is a collateral issue, and allowing the documents or related testimony to be admitted for this purpose would constitute improper collateral impeachment, which should be excluded. *United States v. Purdy*, 144 F.3d 241, 245–46 (2d Cir. 1998) ("Extrinsic evidence offered for impeachment on a collateral issue is properly excluded.") Here, to the extent plaintiff fell from his wheelchair during his time in MTA custody *after* the arrest took place and/or after his release from MTA custody, this has nothing to do with the disputed facts of his arrest.

Moreover, as to the three reports indicating that disorderly conduct and/or aggressive panhandling summonses were issued to Mr. Randolph on other occasions, there is no evidence that plaintiff was found guilty of any of the alleged violations. Even if, *arguendo*, he was, these violations would be sealed under New York CPL 160.55(1)(c) as they are violations and not crimes. They certainly would be sealed if they were dismissed. While it is not clear to plaintiff how defendants obtained the sealed records of these summonses as plaintiff did not provide the authorization required under law to access any such records, the underlying circumstances, which do not tend to prove or disprove any materially disputed fact in this case, should not be used against the plaintiff as he has not placed them in issue in this litigation. The only arrest that he has placed in issue is the alleged false arrest that occurred on February 24, 2016.

We further note that defendants represented in their moving papers, and on the record in Court this week, that they do not intend to the introduce evidence of prior arrests or convictions. To the extent these events constitute prior arrests, they should be excluded based on defendants' representation in this regard as well.

Plaintiff also asserts that even if somehow deemed relevant over his objection, all such reports should nonetheless be excluded because the undue prejudice to plaintiff far outweighs any probative value they may have.

Plaintiff addresses additional specific objections to each of the documents as follows:

- Incident Report 13-2769 (MTA 001546-MTA 001548): This incident report concerns an allegation that Mr. Randolph was present at the 125th Street Train Station, was intoxicated, and then threw himself out of his wheelchair. This report is not relevant to any disputed claims as plaintiff is not alleged to have thrown himself from his wheelchair – defendants forcibly removed him from it – and there is no allegation that plaintiff was intoxicated during the subject incident. As this

report sets forth irrelevant and improper propensity evidence, and is highly prejudicial, it should be excluded as direct evidence, and it would likewise be improper impeachment as it does not pertain to any disputed material issue.

- Incident Report 14-11470 (MTA 001525-MTA 001526): This report concerns allegations that plaintiff was asked to not charge his scooter near Track 20 at Grand Central Station, and that plaintiff then purportedly began to yell and scream. A warrant check was then conducted, revealing a warrant, and plaintiff was thereafter released with a disorderly conduct summons. This report should be precluded as improper propensity evidence as argued above. Further, the report concerns a prior disorderly conduct arrest. Defendants have represented that they would not introduce evidence or question related to prior arrests, therefore this report should be excluded on this basis as well. Further the report contains a reference to the warrant that Your Honor already ruled will not be permitted at trial. Finally, the report sets forth hearsay within hearsay insofar as it sets forth information from third party NYPD officers.

- Incident Report 16-3147 (MTA 001532-MTA 001534): This report concerns an allegation that plaintiff was sleeping in his wheelchair inside the 125th Street Metro North Station, and that when approached by officers, he became irate and verbally combative. A warrant check was then conducted, revealing a warrant, and plaintiff was thereafter released with a disorderly conduct summons. This report should be precluded as improper propensity evidence as argued above. Further, the report concerns a prior disorderly conduct arrest that would be sealed, and for which defendants have stated they would not otherwise seek to introduce to the extent it constitutes a prior arrest. This report also contains a reference to the already excluded NYPD warrant. Finally, there is hearsay within hearsay in this document insofar as the report contains information from third party NYPD officers.

- Incident Report 16-6279 (MTA 001535-MTA 001536): First, plaintiff objects to the admission of this report because it concerns an incident which post-dates the February 24, 2016 incident that is the subject of plaintiff's claims. Further, the report concerns an incident where plaintiff purportedly complained of back pain while attempting to throw himself out of a wheelchair and therefore would be improper impeachment as it does not relate to any disputed issue in this case. It is irrelevant to any disputed claims, sets forth improper evidence of alleged bad acts that are disputed and which can't be tested, and is otherwise highly prejudicial prior bad acts evidence. This report should thus be excluded.

- Incident Report 16-7090 (MTA 001538-MTA 001539): Plaintiff objects to the admission of this report because it, too, concerns an incident which post-dates the February 24, 2016 incident that is the subject of plaintiff's claims. Further, the report concerns an incident where plaintiff complained of right eye pain and thereafter refused medical attention. Plaintiff submits there is absolutely no arguable basis to admit this document, and to the extent is it being offered for

impeachment, there is no allegation contained in the report that plaintiff lied about the eye pain. It is entirely irrelevant and should be excluded.

- Incident Report 17-1312: Plaintiff objects to the admission of this report because it concerns an incident which post-dates the February 24, 2016 incident that is the subject of plaintiff's claims. The report concerns allegations that plaintiff was aggressively panhandling in Grand Central, was asked to leave, and then allegedly became irate. A warrant check was then run, revealing a warrant. Plaintiff was taken into custody, after which he allegedly feigned a seizure. Plaintiff was taken to the hospital and released with tickets for disorderly conduct and aggressive panhandling. This report should be precluded as improper propensity evidence as argued above – to wit: the sole purpose would be to show plaintiff acted in conformity with this character trait on the subject incident. Further, the report concerns an arrest that would be sealed regardless of the disposition. Defendants have represented that they would not introduce evidence or question related to other arrests or convictions, and certainly a prior sealed arrest would have no probative value. The report also contains a reference to the already excluded NYPD warrant, and also constitutes hearsay within hearsay, insofar as the report contains information from third party EMTs who can't be tested on the allegations. Further, insofar as the report is apparently being offered for impeachment purposes, it should be excluded for the reasons set forth above as to impeachment.

## 2. Plaintiff's Medical Records

Plaintiff takes issue with and primarily objects to those portions of the medical records that relate to allegations of plaintiff falling from his wheelchair, purposely or otherwise, *after* he was placed under arrest and after he was released from defendants' custody with a summons while he was at Bellevue Hospital, as well as to other references in the records that are not relevant to his injuries in this case and that are otherwise prejudicial. Plaintiff's proposed redactions or disputes with defendants' redactions are highlighted in the submission filed today by defendants.

For the reasons set forth in point 1, *supra,* evidence or allegations of plaintiff allegedly falling or allegedly feigning falls from his wheelchair should not be allowed at this trial for a number of reasons. There is no question in this case that defendant Deras forcibly removed plaintiff from his wheelchair during the subject incident, and any suggestion that he fell on his own on another occasion, purposely or otherwise, does not tend to prove or disprove any materially disputed fact. These circumstances – to wit: the circumstances leading to plaintiff's arrest - are not in dispute in this regard. Thus, admission of any such evidence would be highly prejudicial, as it has no bearing on whether there was probable cause to arrest plaintiff. The Court indicated it might be inclined to exclude evidence that plaintiff was dragged *during* the incident. Although plaintiff disagrees and respectfully urges the Court to reconsider this as any pain and suffering experienced by plaintiff during the arrest, if it were found to be a false arrest, would be relevant to damages on the false arrest claim, and would likewise be part of the MTA's liability under the doctrine of *respondeat superior* for the state law false arrest and assault and battery claims, surely evidence of plaintiff falling, and/or any related disputes he had with the hospital over his discharge, could be excluded as well. The only apparent purpose of such evidence and/or testimony is to

prejudice Mr. Randolph by referring to disputed allegations of falling or of feigning, bad acts evidence intended to demonstrate that Mr. Randolph had a character trait of being uncooperative or of falling out of his wheelchair.  This evidence violates Rule 404(b)'s prohibition of propensity evidence, and is otherwise highly prejudicial under Rule 403.   Among other concerns, such evidence will inevitably lead the jury to speculate or otherwise focus on unrelated conduct when deciding whether the defendants acted reasonably in this case, and when it evaluates plaintiff's conduct during the subject incident.  Any such testimony or evidence, whether in the MTA incident reports, plaintiff's medical records, or from any other source, should be excluded at trial.

### 3.   ACD – Proposed Instruction

As the parties attempted to work out a stipulation but were not able to, plaintiff respectfully proposes the following instruction:

During the course of the criminal prosecution of the summons issued by defendant Foy to Mr. Randolph, which took place in New York City Criminal Court, plaintiff accepted an Adjournment in Contemplation of Dismissal ("ACD") to resolve the summons.  An adjournment in contemplation of dismissal is an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice.  CPL 170.55 (2)

If the case is not so restored within such six months or one year period, the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice.  *Id.*

The granting of an ACD is not a conviction or an admission of guilt. No person shall suffer any disability or forfeiture as a result of such an order.  Upon the dismissal of the accusatory instrument at the conclusion of the ACD, the arrest and prosecution are deemed a nullity and the defendant is restored, in contemplation of law, to the status he occupied before his arrest and prosecution.  CPL. 170.55 (8)

I instruct you that even though the summons issued to Mr. Randolph was dismissed after the expiration of an ACD, you must not speculate that the acceptance of an ACD and the subsequent dismissal and sealing of the charge relates in any way to the question of whether there was probable cause to arrest the plaintiff, and you must not consider the ACD when deciding whether or not there was probable cause for plaintiff's arrest.

### 4.   Failure to Intervene Claim Against Defendants Tortora and Bradshaw – False Arrest

"It is well settled that 'all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'"  *Coggins v. County of Nassau*, 988 F.Supp.2d 231, 245 (E.D.N.Y. 2013) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).  An officer may be held liable for failure to intervene if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  *See Decayette*

*v. Goord*, No. 06 Civ. 0783 (AMC), 2009 WL 1606753, *8 (N.D.N.Y. June 8, 2009). "Whether an officer can be held liable on a failure to intervene theory is generally a question of fact for the jury to decide." *See id.* (citing *Anderson*, 17 F.3d at 557 ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise"). A duty to intervene to prevent the continuation of the constitutional violation resulting from a *false arrest* continues after the arrest. *See Coggins*, 988 F.Supp.2d at 245.

Plaintiff respectfully draws the Court's attention to paragraphs 7, 17, and 31 of plaintiff's Rule 56.1 Counter Statement, which set forth, *inter alia,* that defendant Tortora was aware from a prior interaction with plaintiff that day that plaintiff had permission to charge his chair (¶¶ 7 and 17), and that defendants Bradshaw and Tortora watched the incident unfold from several feet away (¶ 31). *See* ECF Doc. 46. The Court is further respectfully referred to the enclosed excerpts of defendant Bradshaw's testimony, which confirm from Bradshaw's version of the incident that not only did Tortora and Bradshaw witness the entire arrest from several feet away, but that Bradshaw observed defendant Foy question the propriety of defendant Deras' order to arrest the plaintiff. Bradshaw further describes that Randolph was not disorderly as his actions were directed at the officers, not at the public, which is a necessary element for a disorderly conduct violation to be committed. This, coupled with the testimony that Tortora knew from an earlier interaction that day that Randolph had permission to charge his chair, all triggered a duty on the part of defendants Tortora and Bradshaw to intervene in the alleged false arrest. Because Tortora and Bradshaw witnessed the arrest first hand, and were not in some other area when the arrest occurred, and a jury could find that they were aware of facts that would have triggered their duty to intervene in an apparently false arrest, questions of material fact remain to be determined by a jury as to whether they failed to intervene.

For the foregoing reasons, and given that defendants did not move to dismiss the failure to intervene claim as it related to plaintiff's false arrest claim, the failure to intervene claim as to false arrest against defendants Tortora and Bradshaw should be tried.

### 5.  Plaintiff's Objection to a Jury Charge on Nominal Damages

Plaintiff requests that any proposed nominal damages charge and any question regarding nominal damages on the verdict sheet be omitted. As an initial matter, it is within the Court's discretion not to issue a nominal damages charge. *See Morse v. Fusto*, 2013 WL 4647603, *20 (Aug. 29, 2013 E.D.N.Y. 2013) (finding no error in failing to charge on nominal damages, much less plain error); *Vilkhu v. City of New York*, 2009 WL 537495, * 5 (March 3, 2009 E.D.N.Y. 2009) (finding that a defendant is not entitled to a nominal damage instruction where the plaintiff had waived it). The court in *Vilkhu* found this particularly true under circumstances similar as to here—where the proof of the alleged constitutional violation hinges on the jury's determinations of witness credibility—stating the following:

[A] nominal damages instruction affords the jury an opportunity to engage in improper compromise. In such cases, a plaintiff should be allowed to determine whether to seek both nominal and compensatory damages, or whether to remove the option of nominal damages from the jury's consideration and instead seek an

outcome in his case based on his showing of proximately caused actual injury. To afford a defendant an equal right to a nominal damages charge in such a case would preclude a plaintiff from making this strategic choice. *Id.* at 6.

Based on the foregoing, plaintiff should be afforded the strategic choice of waiving a nominal-damages charge in this case.

## OTHER ISSUES

- **Adding the Harlem Hospital Records to Plaintiff's Exhibit List**

Plaintiff respectfully requests permission to add the Harlem Hospital records, with agreed upon or otherwise court approved redactions, to plaintiff's exhibit list. They are already being offered by defendants as Exhibit A on defendants' exhibit list (ECF Doc. 71, ¶ 10). They were inadvertently not included on plaintiff's list in the proposed JPTO.

- **Evidence of Pain and Suffering as Damages for False Arrest and Assault and Battery**

As discussed at the pre-trial conference earlier this week, plaintiff respectfully urges the Court to reconsider any limitation on the evidence of pain and suffering testimony and/or evidence as part of plaintiff's damages for false arrest and/or failure to intervene under Section 1983 against the relevant individual defendants, and for false arrest and assault and battery under New York law against the relevant individual defendants, as well as against the MTA itself under the doctrine of *respondeat superior*, as distinct from evidence to support liability for the now dismissed excessive force claim.

"An individual subjected to a false arrest is entitled to two types of compensatory damages: (1) for loss of liberty and (2) for physical and emotional distress." *Thomas v. Kelly*, 903 F.Supp.2d 237, 262 (S.D.N.Y. 2012) (*citing Martinez v. Port Auth. of N.Y. & N.J.*, 445 F.3d 158, 161 (2d Cir. 2006) and *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir.2004)). *See also Graham v. City of New York,* 128 F.Supp.3d 681, 714 (E.D.N.Y. 2015)(including physical pain as a factor in determining whether vacatur or reduction of a false arrest damages award was warranted when the jury found for plaintiff on false arrest but rejected the plaintiff's excessive force claim), and *Alla v. Verkay*, 979 F.Supp.2d 349, 372 (E.D.N.Y.2013)(including physical pain as a factor in determining whether remittitur on false arrest damages award was warranted, even when jury awarded separate damages for excessive force).

To the extent the jury returns a verdict in plaintiff's favor on the false arrest and/or failure to intervene claims against any of the individually named defendants, defendant MTA would likewise be liable for false arrest and for assault and battery via the doctrine of *respondeat superior,* as any force used by MTA employees in the course of a false arrest is *per se* unlawful. *See Johnson v. Suffolk County Police Dep't*, 245 A.D.2d 340 (2d Dept. 1997) (holding that as the arrest of plaintiff by the police officer was unlawful, the police officer committed a battery when he touched the plaintiff during that arrest); *Budgar v. State of New York*, 98 Misc.2d 588 (1979) (holding that

"since the arrest was unlawful, a technical assault and battery occurred when the claimant was handcuffed and forcibly placed in the State police car").

Thus, even if plaintiff could not identify which officer dragged him during his arrest, which resulted in the Court finding that there is no federal excessive force claim in this regard, to the extent the jury finds he was dragged by MTA officers during his false arrest, and/or suffered other pain and suffering arising from the false arrest, such would be competent evidence relating to plaintiff's pain and suffering proximately caused by the false arrest as distinct from a separate claim for excessive force under Section 1983 against an individually named defendant.

Thank you for your consideration.

Respectfully,

s/ Brett Klein

Brett H. Klein

Enc.
cc:      All Counsel (by ECF)