UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
KERRIN RANDOLPH,                      :
                                      :
                    Plaintiff,        :        17cv1433(DLC)
          -v-                         :
                                      :        OPINION AND ORDER
METROPOLITAN TRANSPORTATION AUTHORITY, :
RAYMOND FOY, RAHIM BRADSHAW, ANTHONY  :
TORTORA, and JOSE DERAS, Individually, :
                                      :
                    Defendants.       :
                                      :
------------------------------------- X
APPEARANCES

For the plaintiff:
Lissa Green-Stark
Brett H. Klein
Brett H. Klein, Esq. PLLC
305 Broadway, Suite 600
New York, NY 10007

For the defendants:
Joshua Deal
Rebecca Embry
Landman, Corsi, Ballaine & Ford PC
120 Broadway
New York, NY 10271

DENISE COTE, District Judge:

     The jury in this Section 1983 action determined after trial

that the defendants -- the Metropolitan Transit Authority and

its officers ("MTA" and "MTAPD Officers") -- violated the

plaintiff's rights when it arrested him on February 24, 2016.

The jury awarded the plaintiff only nominal damages.  This

1

Opinion denies the plaintiff's motion pursuant to Rule 59, Fed. R. Civ. P., for a new trial as to damages.

## Background

As described in more detail below, the motion for a new trial principally argues that it was error not to instruct the jury that it was required to award plaintiff compensatory damages, to give the jury the option of awarding only nominal damages, and to deny plaintiff's motions to exclude evidence of a prior interaction between him and MTAPD Officers on July 23, 2014 (the "2014 Incident") and portions of the Bellevue medical records that describe plaintiff feigning two falls while at Bellevue Hospital just after his February 24, 2016 arrest.

<u>Trial Evidence</u>

As relevant to this motion, the evidence at trial included the following. The plaintiff Kerrin Randolph is a homeless man who, due to a spinal cord injury, uses an electric wheelchair. While he is not paralyzed, he has only a limited ability to walk. The plaintiff frequently spends his days at Grand Central Station and charges his wheelchair while there.

On February 24, 2016, MTAPD Officers encountered plaintiff while he was charging his wheelchair at Grand Central Station in the waiting area of the Station Master's Office ("SMO") for ticketed passengers. The description of their interaction was

hotly contested at trial. At some point during their encounter, one of the Officers, Sergeant Deras, decided to issue plaintiff a summons. Sergeant Deras testified that after plaintiff reacted abusively to the decision to issue him a summons, he concluded that plaintiff should be arrested. To effect the arrest, plaintiff was removed from his electric wheelchair and placed on the floor nearby. After a short time, plaintiff was placed in a manually operated MTA wheelchair in order to take him to an MTAPD office for processing.

The parties vehemently disputed the manner in which plaintiff was arrested and transferred to the MTAPD office. Plaintiff asserted at trial that he was roughly handled when removed from the wheelchair. He testified that an MTAPD Officer grabbed his right arm, pushed him to the floor, and dragged him along the floor of the SMO waiting area. Plaintiff further testified that the MTAPD Officers did not properly strap him into the MTA wheelchair and that he fell head-first out of the wheelchair while he was being transported to the MTAPD office, hit his head on the floor, and lost consciousness. According to the defendants, the MTAPD Officers neither pushed plaintiff to the ground nor dragged him across the floor. They claim that plaintiff continued his verbal abuse and obstructed their efforts to arrest him. They further testified that, although

plaintiff tried to interfere with their efforts to move him in the MTA wheelchair, he never fell out of it.

At some point, plaintiff went limp in the MTA wheelchair and the MTAPD Officers called Emergency Medical Services ("EMS"). EMS transported plaintiff to Bellevue Hospital, where he was admitted for tests. Plaintiff was in MTA custody for about an hour; the MTAPD Officers issued plaintiff a summons shortly after his arrival to the hospital and left him there.[1] Hospital staff examined plaintiff, found no bruising, lacerations, swelling, or any new injuries, and treated him for muscle spasms. Although the hospital records record that plaintiff complained that the officers had handled him roughly by putting his right arm behind his back and dragging him, they reflect no complaint that he fell out of a wheelchair or lost consciousness. By contrast, the medical records record plaintiff's admission that he became agitated when arrested and "feigned syncope" -- i.e., feigned his loss of consciousness.

The Bellevue Hospital records record that plaintiff was uncooperative and hostile during his examination when he arrived at the hospital. He was boisterous, irritable, and physically

---

[1] The MTAPD learned that there was an outstanding warrant for Randolph's arrest at about the time he arrived at Bellevue. Therefore, as a matter of law, his claim for false arrest ended there.

and verbally threatening to hospital staff.  They referred him for a psychological evaluation.  The records report that he was upset about being seen by a psychiatrist.  After staying overnight, hospital staff determined that plaintiff could be discharged.  Plaintiff refused to leave and stayed another night, until February 27.

On February 27, a nurse saw plaintiff sit on the side of his bed and slowly ease himself down to the floor.  When he saw the nurse he said, "[Y]ou see where I am?  I am on the floor.  I just fell.  I cannot move."  He stated that he was going to sue the hospital and needed his phone to record everything for court.  The medical records also record plaintiff saying, "Now let's see who wants to be a fool like the officer who cuffed me and brought me here."  Later that morning, after being discharged, plaintiff again slowly fell out of his wheelchair while in the hospital lobby, complaining that he hadn't been properly strapped in.  He shouted that he had been discharged without transportation to his shelter.  Plaintiff was sent to the emergency department for further evaluation, where hospital staff determined that no loss of consciousness or injury was sustained.

Pre-trial Motion Practice

Plaintiff filed suit on February 24, 2017 claiming, among other things, that he was falsely arrested and was injured during and after his arrest. He brought various claims for compensatory and punitive damages under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act, and New York state law. An Opinion of June 12, 2018 granted summary judgment for the defendants on all claims except for plaintiff's claims for false arrest in violation of 42 U.S.C. § 1983, and plaintiff's claims for false arrest and assault and battery under New York State law. Randolph v. MTA, No. 17cv1433(DLC), 2018 WL 2943744, at *9 (S.D.N.Y. June 12, 2018).

Trial was scheduled to occur on October 9, 2018. On September 14, 2018, plaintiff filed a motion in limine. Plaintiff's motion asserted three grounds for exclusion of evidence; two of the three are relevant here. First, plaintiff sought to exclude the admission of eleven MTAPD incident reports related to prior altercations between plaintiff and MTAPD Officers. One of the eleven reports was a report of the 2014 Incident. According to the report, plaintiff was charging his electric wheelchair at Track 20. An MTAPD Officer advised plaintiff that he could charge his scooter in the SMO for a

reasonable amount of time because cleaners needed to use the electrical outlets at the track.  In response, plaintiff shouted expletives at the MTAPD Officer and threatened to sue him for millions of dollars.  He was issued a summons.

Second, plaintiff sought to redact portions of the Bellevue Hospital medical records beyond those related to the diagnosis and treatment arising from the arrest.  His requested redactions included references to the two feigned falls at Bellevue Hospital on February 27, 2016.

At a final pretrial conference on October 2, the Court noted that the MTA incident reports were excluded from the rule against hearsay pursuant to Rule 803(8), Fed. R. Evid.  The parties were directed to confer and submit letters identifying any remaining objections to the reports, along with copies of the incident reports.  With respect to the Bellevue Hospital medical records, the parties were directed to confer, provide the court with a copy of the records, and identify any proposed redactions by letter.

Near the end of the conference, plaintiff's counsel asserted that it was a plaintiff's prerogative not to have the jury given a nominal damages charge.  The Court directed plaintiff to submit a letter identifying relevant law in support of his position.

On October 4, plaintiff objected to the admission of each of six MTA incident reports which the defendants sought to offer at trial.[2]  The plaintiff principally objected on the grounds that the reports were inadmissible under Rules 403 and 404(b), Fed. R. Evid.  He also objected to the admission of portions of the Bellevue Hospital medical records, including references to the plaintiff feigning two falls at the hospital.  With respect to the hospital records, plaintiff argued that "to the extent plaintiff fell from his wheelchair during his time in MTA custody after the arrest took place and/or after his release from MTA custody, [the medical records] ha[ve] nothing to do with the disputed facts of his arrest."  The plaintiff also maintained his argument with respect to waiving nominal damages.  Citing two district court decisions, plaintiff argued that "it is within the Court's discretion not to issue a nominal damages charge" and that he "should be afforded the strategic choice of waiving a nominal-damages charge in this case."

An Order dated October 5 granted plaintiff's motion in limine with respect to all prior MTAPD incident reports except the one of the 2014 Incident.  The Order stated that "[t]he

---

[2] At the final pretrial conference, the defendants indicated their intention to introduce only five of the eleven MTA incident reports.  Shortly after the conference, the defendants identified six of the eleven reports that they sought to offer at trial.

other incidents are factually dissimilar to the events at issue in this action and, as such, are irrelevant." The Order also allowed the plaintiff to waive a request for an award of nominal damages, but explained that should the jury fail to award compensatory damages, "a verdict in favor of the defendants shall be entered notwithstanding any jury finding of liability." The Court cited <u>Matusick v. Erie Cty. Water Auth.</u>, 757 F.3d 31, 64 (2d Cir. 2014), for the proposition that, where a jury finds a defendant violated a substantive constitutional right but also finds that the plaintiff suffered no compensable harm, "the jury <u>must</u> award nominal damages." A second Order dated October 8 largely denied plaintiff's motion to redact portions of his medical records.

In a letter of October 8, plaintiff requested reconsideration of the Orders of October 5 and October 8. He argued that the 2014 Incident was not factually similar to the incident that prompted the lawsuit and that it was not admissible pursuant to Rule 404(b), Fed. R. Evid. He also asserted that neither of plaintiff's falls at the SMO were feigned, so the evidence of allegedly feigned falls at Bellevue Hospital should not be admitted.

At a conference before jury selection on October 9, the plaintiff advised the Court that he would not waive his request

for nominal damages.  The Court also addressed the October 8 request for reconsideration.  With respect to the admissibility of the report regarding the 2014 Incident, the Court reasoned that that incident was similar enough to the issues in dispute at the trial to be admissible pursuant to Rule 404(b).  "It is the plaintiff's reaction to being approached by an MTA officer while charging his scooter which is the heart of what is disputed in this case."  The Court found that the evidence was not propensity evidence and observed that it had considered the Rule 403 implications and didn't find that there was "any unfair prejudice sufficient to outweigh the probative value of this for the jury."  The Court also noted that it would provide a limiting instruction if requested by any party.

The Court also denied plaintiff's request to redact from the Bellevue Hospital medical records any reference to his feigning falls in order to prolong his stay in the hospital. Among other things, the Court observed that the way the defendant "was acting with the officers at Grand Central Station and with the hospital staff at the hospital is all part of [a] course of conduct or could be read as such by the jury."  The Court found it to be highly relevant to the assessment the jury had to make about who is telling the truth and whose description of facts is accurate.

The Court also reviewed with the parties the scope of compensatory damages that the plaintiff could recover.  Should the jury find that there was no probable case for his arrest, the Court explained that plaintiff would be entitled to recover damages for any injury he sustained until the defendants discovered that there was an outstanding warrant for his arrest. These damages included his loss of liberty, intangible injuries such as emotional pain and suffering, and any physical injury. This would include, as asserted by the plaintiff, his handcuffing, removal from his wheelchair, being pulled across the floor by the defendants, and his falling or tumbling out of the MTA wheelchair into which the defendants placed him.  With respect to the battery claim, which requires intentional conduct, the request for compensatory damages could be premised on the handcuffing and removal from the plaintiff's wheelchair and being pulled or dragged across the floor.

October 9 to 11 Trial

The trial was held from October 9 through October 11.  The plaintiff called six witnesses:  the four defendant officers and an MTA employee, in addition to providing his own testimony to the jury.  Each witness testified once during the trial.  When called as witnesses during the plaintiff's case, the defendants gave their direct testimony during "cross examination" by

defense counsel.  At the conclusion of the trial, the Court
granted the motion to dismiss the claims against two of the four
MTAPD Officer defendants.

At trial, the defendants sought to establish probable cause
for plaintiff's arrest based on his alleged violations of 21
N.Y.C.R.R. 1085.13, which prohibits charging an electrical
device without permission of an authorized Metro-North employee,
and N.Y. Penal Law § 240.20, which prohibits disorderly conduct,
including by making unreasonable noise or using abusive or
obscene language.  With respect to the alleged violation of Rule
1085.13, MTAPD Officers testified at trial that they did not
know until after the arrest that plaintiff may have received
permission to charge his electric wheelchair from Metro-North
personnel.  With respect to the disorderly conduct charge, MTAPD
Officers testified that, in response to their request that
plaintiff produce a train ticket, plaintiff began cursing and
yelling at the officers with obscene and abusive language.
Plaintiff testified that he told the officers that he had been
given permission to charge his electric wheelchair.  He also
testified that he did not curse or use abusive language.
Although he admitted calling one of the officers an "idiot," he
stated that he used that language only after he had been placed
in handcuffs.

The charging conference took place early on the morning of October 10. A draft of the jury charge and proposed verdict sheet had been distributed to the parties in advance. The plaintiff made few objections. He did not make any objection to the charges on proximate cause or compensatory damages. He had no objection to the charge on nominal damages other than to point out that the verdict sheet included the figure $1, but that figure was not specified in the charge, which used the phrase "token sum" instead.

The parties' arguments regarding damages during their summations included the following. Plaintiff's counsel emphasized that, although the plaintiff did not suffer new severe injuries, he experienced "pain and suffering in a physical sense, pain and suffering in an emotional sense and loss of liberty." Plaintiff highlighted the pain and discomfort that the plaintiff likely felt when his arms were pulled behind his back and highlighted notes in the medical records indicating that the plaintiff suffered "worsening stiffness and pain" and was diagnosed with muscle spasms. Plaintiff's counsel encouraged the jury to consider the fear and panic that the plaintiff likely experienced from the defendants' wrongful conduct. He challenged the jury to consider what "being in

handcuffs for about an hour [would] mean to you in your life, if that happened to you."

Defense counsel argued that "[p]laintiff has not established that he suffered damages as a result of the arrest." He emphasized that the Bellevue Hospital medical records "contain no objective evidence of any injury or worsening of an existing injury."  He argued that the plaintiff "offers no evidence regarding emotional damage except for his own self-serving statements, and the jury will have to decide whether those statements are credible or not."  Defense counsel pointed to the MTA report of the 2014 Incident and the portions of the Bellevue Hospital medical records indicating that he was uncooperative and feigned two falls from his electric wheelchair.  He reminded the jury to consider this evidence when evaluating the plaintiff's motives and whether he had been truthful.

The Jury Charge

On October 11, the Court charged the jury, including with respect to its responsibility to compensate plaintiff for any injuries he suffered as a result of any violation of his rights.[3] If the jury found that the defendants violated plaintiff's

_____

[3] A copy of the charge was given to each of the jurors before the Court read it to them.  They took those copies with them into the jury room for their deliberations.

rights, the Court stated that the jury may award damages for plaintiff's "conscious pain and suffering," including "any mental suffering," any "emotional suffering," and "any resultant physical ailment caused by the wrongful act of the defendants." The Court also stated that the jury "may award Mr. Randolph damages for his loss of liberty if [it] find[s] that he was falsely arrested." The Court explained that "[d]amages for loss of liberty compensate a person for the time lost while confined without consent," and directed the jury that it "may take into account the time from Mr. Randolph's arrest until the time [he] arrived at the hospital." The Court further stated that, while "[t]here is no exact standard for fixing the compensation to be awarded for these damages," the purpose of the damage award "is not to punish the defendant" but "to compensate Mr. Randolph for the actual harm he suffered."

The Court also charged the jury with respect to any award of nominal damages. Specifically, the Court issued the following instruction:

> If you find, after considering all of the evidence
> presented, that any of the defendants violated the
> plaintiff's constitutional rights under Section 1983
> or violated the plaintiff's rights under state law but
> that the plaintiff suffered no actual injury as a
> result of any violation, you must award the plaintiff
> nominal damages.

The Court further explained that nominal and compensatory damages are mutually exclusive. "Either [plaintiff] experienced actual damages, in which case you must award compensatory damages, or else he did not, in which case, you must award nominal damages."

The Court also included a limiting instruction with respect to the MTA report of the 2014 Incident. Specifically, the Court instructed the jury that, if it determined that plaintiff engaged in the conduct described in the report, it "may, but need not, draw an inference [about] Mr. Randolph's plan, manner or modus operandi when responding to officers who interrupt him as he charges his scooter at Grand Central Station." The Court also instructed the jury that it may consider whether evidence regarding the incident bears "on the plaintiff's credibility when describing the events of February 24, 2016." The Court instructed the jury that any "[e]vidence of similar conduct may not be considered . . . for any other purposes," and that the jury may not "use this evidence to conclude that because the plaintiff acted a certain way in 2014, he must also have acted the same way on February 24, 2016." Other than reiterating his objection to the admission of the report of the 2014 Incident, plaintiff's counsel made no objection to the specific language included in the jury charge.

<u>Jury Deliberations</u>

At the conclusion of the charge, plaintiff's counsel was again given an opportunity to object to the charge. He made no objections.

The jury began its deliberations shortly before lunch on October 11. At about 3:35 p.m. it inquired as follows through a note:

> We need clarity in the jury charges regarding Battery. Specifically, the paragraph starting on p. 15 last sentence and ending on page 16. Does every false arrest constitute battery if the Plaintiff is touched? If not, can an example be given where there is not Battery?

After consulting with counsel, the Court read the note to the jury and instructed the jury as follows: "The simple answer to your question, does every false arrest constitute battery if the plaintiff is touched, is yes. As you saw in the rest of the charge, if there wasn't a false arrest, then you must find excessive force for battery. So you have the alternative instructions."

The jury returned their verdict at about 4:00 p.m. On plaintiff's claim for false arrest, the jury determined that defendants did not establish by a preponderance of the evidence that they had probable cause to arrest the plaintiff. On his claim for battery, the jury determined that the plaintiff established by a preponderance of the evidence that Sergeant

Deras and an unidentified MTA officer committed a battery. With respect to damages, the jury separately determined on each claim that the plaintiff had not established by a preponderance of the evidence that he was entitled to compensatory damages and awarded him instead nominal damages in the amount of $1. The jurors were polled and the parties consented to their dismissal.

Post-Verdict Argument

After the jury was dismissed, plaintiff's counsel argued that the plaintiff was entitled to some amount of compensatory damages for his loss of liberty, his description of his pain and suffering, and his mental anguish, even if the award were at the lower end of the spectrum. He indicated that he would move for a new trial on damages.

Because the evidence was still fresh in everyone's mind, the Court shared some brief observations on the issue. The Court observed that, in its judgment, the evidence supported a verdict "either way" on the false arrest claim. The jury had difficult judgments to make about the credibility of several witnesses, including the plaintiff. In the view of the Court, the plaintiff's testimony that he fell out of the MTA wheelchair, fell on the floor, and was knocked unconscious "was so unsupported by the record and contrary to so much of the

evidence, including the hospital records," that the jury could have rejected all of his testimony.

But, while "[t]he jury made a judgment call here that the plaintiff had the better of the proof on the false arrest claim[,] . . . when it comes to damages . . . the jury was entirely entitled . . . to find that there were no damages." Moreover, the Court explained that "[t]he loss of liberty issue was a complex one because [the jury] could have found that the plaintiff's reaction to getting the summons and the reaction to everything that happened actually brought upon himself both the length of time he was in custody . . . and any suffering he had. The Court observed that "[t]he hospital records, particularly those that relate to his early hours of admission, were very undermining of his case and claim." The Court further noted that, if there had been a substantial award of damages, it may have been inclined to grant any motion by the defendants to reduce the award.

On November 13, judgment was entered. On December 11, plaintiff filed a motion for new trial as to damages pursuant to Rule 59, Fed. R. Civ. P. The motion became fully submitted on January 11, 2019.

## Discussion

Rule 59(a) provides that a "court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "A trial court should not grant a motion for a new trial unless it is convinced that the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice." Ali v. Kipp, 891 F.3d 59, 64 (2d Cir. 2018) (citation omitted). In making this assessment, a court views the evidence "in the light most favorable to the nonmoving party." Id. (citation omitted).

"An erroneous jury instruction requires a new trial unless the error is harmless." Callahan v. Wilson, 863 F.3d 144, 148 (2d Cir. 2017). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Id. (citation omitted).

In his motion for a new trial, plaintiff raises three arguments. First, he claims that he is entitled as a matter of law to an award of compensatory damages for his loss of liberty. Second, he claims it was error to instruct the jury that it could award nominal damages. Third, he claims it was error to overrule his objections to the admission of the report of the

2014 Incident and the references to the feigned falls in the
Bellevue Hospital records.  Each issue is addressed in turn.

I.  Compensatory Damages

Plaintiff argues that a falsely arrested plaintiff is
entitled to compensatory damages as a matter of law for his loss
of liberty; that the charge erred in not so advising the jury;
and that the failure to award compensatory damages was a
miscarriage of justice in this case.  No new trial is warranted
on this ground.

"[T]he basic purpose of a § 1983 damages award should be to
compensate persons for injuries caused by the deprivation of
constitutional rights."  Carey v. Piphus, 435 U.S. 247, 254
(1978).  There is "no room for non-compensatory damages measured
by the jury's perception of the abstract 'importance' of a
constitutional right."  Memphis Cmty. Sch. Dist. v. Stachura,
477 U.S. 299, 309-10 (1986).  Were juries free to award damages
"based on the 'value' of constitutional rights, . . . juries
would be free to award arbitrary amounts without any evidentiary
basis, or to use their unbounded discretion to punish unpopular
defendants."  Id. at 310.

A plaintiff may recover compensatory damages "only if he
prove[s] actual injury caused by the denial of his
constitutional rights."  Id. at 307.  A plaintiff is "not . . .

21

entitled to compensatory damages simply because the jury found"
a violation of his constitutional rights.  Ali, 891 F.3d at 66
(affirming denial of new trial where the jury found that
excessive force had been used but awarded plaintiff only nominal
damages); Amato v. City of Saratoga Springs, 170 F.3d 311, 314
(2d Cir. 1999) (same).  "A Section 1983 action, like its state
tort analogs, employs the principle of proximate causation" to
assess whether an award of compensatory damages is appropriate.
Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999).
Without proof that a plaintiff suffered an actual injury that
was "proximately caused by the constitutional violation," a
plaintiff may not recover compensatory damages.  Atkins v. New
York City, 143 F.3d 100, 103 (2d Cir. 1998) (excessive force).
Any charge on compensatory damages, however, must inform the
jury that the plaintiff is "entitled to recover for the loss of
intangible rights."  Kerman v. City of New York, 374 F.3d 93,
125 (2d Cir. 2004).  "The damages recoverable for loss of
liberty for the period spent in a wrongful confinement are
separable from damages recoverable for such injuries as physical
harm, embarrassment, or emotional suffering."  Id.

Where there appears to be an inconsistent verdict, the
trial record must be examined "to determine whether it is
possible to harmonize the jury's verdict."  Ali, 891 F.3d at 65.

There is no inconsistency, however, between a finding that a plaintiff's rights were violated and that the plaintiff should only be awarded nominal damages. Where a constitutional right is absolute, the denial of that right is "actionable for nominal damages without proof of actual injury." Carey, 435 U.S. at 266 (procedural due process violation). Thus, "constitutionally invalid police conduct that by itself causes little or no harm is assessed on ordinary principles of tort causation and entails little or nominal damages." Townes, 176 F.3d at 146. It is the province of the jury to determine "whether the plaintiff's injury resulting from a demonstrated loss of liberty was serious or nonserious and, if serious, to determine what compensation should be awarded." Kerman, 374 F.3d at 132. "[I]f a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages," the jury "must award nominal damages." Id. at 131 (citation omitted); see also Matusick, 757 F.3d at 64. Where a jury is properly instructed as to the law and provided with conflicting accounts of what transpired, a jury is "free to conclude that the truth lay somewhere between these two versions of the relevant events." Ali, 891 F.3d at 66.

Here, the jury was properly instructed on the law of proximate cause and compensatory damages. The compensatory damages charge informed the jury that it could award plaintiff

> damages for his loss of liberty if you find that he was falsely arrested. Damages for loss of liberty compensate a person for the time lost while confined without consent. If you compensate Mr. Randolph for his loss of liberty, you may take into account the time from Mr. Randolph's arrest until the time that Mr. Randolph arrived at the hospital.

The plaintiff did not object to this charge at the charging conference or after the charge was given to the jury.

It would have been error to instruct the jury as the plaintiff now requests. The jury is not required to award compensatory damages when it finds that a plaintiff was falsely arrested. The burden remains on the plaintiff to prove that the illegal conduct proximately caused the damages the plaintiff seeks.

The jury's verdict was entirely consistent with the evidence and there is no basis to find that it resulted in any manifest injustice. As defense counsel highlighted for the jury, the Bellevue Hospital medical records contained little to no objective evidence that the plaintiff suffered any physical injury. Moreover, it was entirely reasonable to find on this record that the plaintiff was not truthful and that his recitation of his actions and his injuries could not be trusted.

There was significant evidence that the plaintiff was combative and uncooperative before his arrest, at the time of his arrest, and for the hour that he remained in MTAPD custody.  The evidence showed that the plaintiff's aggressive, uncooperative behavior continued at the hospital, after he was no longer in MTAPD custody.  Nor was the jury's finding that the plaintiff's loss of liberty did not merit an award of compensatory damages at odds with the evidence.  The jury was entitled to find that the plaintiff's own behavior played a major role in the way events unfolded on the day of his arrest, that the MTAPD Officers should not have reacted to the plaintiff's provocations by arresting him, but that the Officers did not otherwise abuse him, mistreat him, or hold him in custody for an unreasonably long period of time.

Shortly after the jury confirmed that it was required by law to find that a battery had occurred without any injury to the plaintiff other than the non-consensual contact associated with an unlawful arrest, it delivered its verdict.  It found that the plaintiff had failed to prove an entitlement to compensatory damages and awarded him only nominal damages.  That verdict was entirely reasonable and does not reflect any miscarriage of justice.

In support of his argument that his loss of liberty through a wrongful arrest automatically entitles him to compensatory damages Plaintiff relies on Kerman, 374 F.3d 93. Kerman is inapposite. In Kerman, the district court failed to instruct the jury that it could award the plaintiff compensatory damages for his loss of liberty. Id. at 129. This was a particularly egregious omission given the plaintiff's confinement for at least ten hours. Id. at 128. Here, the jury was properly instructed.

## II. Nominal Damages

Plaintiff next claims that the jury should not have been charged regarding its duty to award nominal damages in the event it found of violation of his rights but did not award compensatory damages. He is wrong.

As explained above, a plaintiff is not entitled to compensatory damages as a matter of law. In order to recover compensatory damages, a plaintiff must establish that a violation of his rights proximately caused an injury that entitles him to compensatory damages. To sustain a claim under Section 1983 or a state law claim for battery, however, some award of damages is required. As the Court of Appeals explained in Amato, because plaintiffs will ordinarily "have their [tort] actions dismissed if they do not allege compensable injury," the

purpose of nominal damages is to ensure that certain rights "remain actionable regardless of their consequences in terms of compensable injury." Amato, 170 F.3d at 318; see also Carey, 435 U.S. at 266 (making procedural due process claim actionable by allowing award of nominal damages); Brooker v. State, 614 N.Y.S.2d 640, 712 (N.Y. App. Div. 3d Dept. 1994) (allowing recovery of only nominal damages for battery that resulted in no actual injury).

In the absence of proof of actual injury, a plaintiff bringing an action under Section 1983 is entitled to only nominal damages. Rentas v. Ruffin, 816 F.3d 214, 223 (2d Cir. 2016) (excessive force); Patterson v. City of Utica, 370 F.3d 322, 337 (2d Cir. 2004) (due process violation); Atkins, 143 F.3d at 103 (excessive force). A jury has no discretion in an award of nominal damages. If a jury finds a constitutional violation but awards no compensatory damages, the instruction on nominal damages must advise the jury that it "must" award nominal damages. See Kerman, 374 F.3d at 131 (false arrest); Matusick, 757 F.3d at 64 (First and Fourteenth Amendment violations).

The jury was properly instructed that it "must" award the plaintiff nominal damages if it found that the plaintiff suffered no actual injury as a result of the violation of his

rights.  No party objected to the substance of the nominal damages charge at the charging conference or after the jury was instructed on the law.  The plaintiff does not contend now that the substance of the nominal damages charge failed in any way to conform with the governing law.

Plaintiff complains instead that he was required to make an election regarding the nominal damages instruction.  When he opposed the inclusion of the charge, the Court agreed to omit the charge on the condition that, should the jury award the plaintiff no compensatory damages, judgment would be entered in favor of the defendants.  Given that choice, plaintiff elected to include the nominal damages charge.  He has pointed to no authority to suggest that giving a plaintiff that option violated the law.

Indeed, because an award of at least nominal damages is required to sustain any tort claim and any claim under Section 1983, it may have been more appropriate to deny plaintiff any option regarding inclusion of the nominal damages charge.  If the nominal damages charge had been omitted, it may have given the jury a false signal regarding the impact of their verdict on a plaintiff's rights and forced them wrongly to conclude that they had to make an award of compensatory damages even when the evidence did not warrant one.

III. Evidentiary Rulings

Finally, plaintiff takes issue with two evidentiary rulings: the admission of the report of the 2014 Incident and the portions of Bellevue Hospital records indicating that plaintiff appeared to feign two falls to prolong his stay in the hospital.  This evidence was properly admitted.

Evidence is relevant if it has any tendency to make a fact of consequence in determining the action "more or less probable than it would be without the evidence."  Fed. R. Evid. 401(a).  Under Rule 402, all relevant evidence is admissible unless otherwise provided by federal law.  Fed. R. Evid. 402; see also United States v. White, 692 F.3d 235, 246 (2d Cir. 2012).

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "Under [the Second Circuit's] 'inclusionary' approach, all 'other act' evidence is generally admissible unless it serves the sole purpose of showing [the person's] bad character."  United States v. Siddiqui, 699 F.3d

690, 702 (2d Cir. 2012); see also United States v. Dupree, 870

F.3d 62, 76 (2d Cir. 2017) (describing factors courts consider

when evaluating whether prior act evidence is properly admitted

under Rule 404(b), Fed. R. Evid.).

Pursuant to Rule 403, even relevant evidence may be

excluded "if its probative value is substantially outweighed by

a danger of . . . unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."  Fed. R. Evid. 403.  Because

"relevant evidence is always prejudicial to one side," United

States v. Kaplan, 490 F.3d 110, 122 (2d Cir. 2007), relevant

evidence should not be excluded unless it "unfair" and has some

"adverse effect beyond tending to prove the fact or issue that

justified its admission into evidence."  Perry v. Ethan Allen,

Inc., 115 F.3d 143, 151 (2d Cir. 1997) (citation omitted).

A.  The 2014 Incident

The MTA report of the 2014 Incident was properly admitted

pursuant to Rules 404(b) and 403.  It was not introduced as

propensity or character evidence.  As the plaintiff's brief

admits, during the 2014 Incident the plaintiff "received a

summons for conduct similar in nature to the conduct he

allegedly engaged in during the subject incident."  The Court

found that the probative value of the evidence was not

substantially outweighed by any unfair prejudice.  The jury was given a limiting instruction at the time of its admission and again in the jury charge.  The plaintiff objected to the admission of the evidence but made no request for any change to the limiting instruction.  The jury was instructed that it "may not use this evidence to conclude that because the plaintiff acted a certain way in 2014, he must also have acted the same way on February 24, 2016" when approached by officers in the SMO waiting area.

### B.  The Bellevue Hospital Records

The portions of the Bellevue Hospital medical records that described plaintiff feigning two falls were also properly admitted.  Plaintiff's statements and conduct during his hospital stay following the arrest were highly relevant to both his description of his mistreatment by the arresting MTAPD Officers and his claim for damages due to that mistreatment. They bore directly on the credibility of his testimony regarding the unlawful arrest, the defendants' treatment of him, and the extent or existence of injuries he sustained.  Among other things, if the jury found that plaintiff had in fact feigned falls at the hospital, it could have inferred that plaintiff's description of his earlier falls at Grand Central Station were also fabricated.  It could properly have informed the jury's

assessment of plaintiff's assertions about the manner in which he was removed from his electric wheelchair, the testimony of the MTAPD Officers about his obstructionist behavior while in custody, and plaintiff's assertion that he had fallen out of the manually operated wheelchair, hit his head on the floor, and was unconscious until he arrived at the hospital.  The plaintiff sought compensatory damages for his unlawful arrest.  The jury was entitled to see the evidence from the entirety of the hospitalization that was inextricably linked to the events surrounding the arrest.  The plaintiff's remarks to hospital staff in connection with those falls also shed light on the plaintiff's motive in bringing this lawsuit.

## Conclusion

Plaintiff's December 11 motion for a new trial as to damages is denied.

Dated:    New York, New York
          April 11, 2019

                              _____
                                    DENISE COTE
                              United States District Judge